GROENDAL *v.* WESTRATE.

1. LIMITATION OF ACTIONS—MALPRACTICE—FRAUDULENT CONCEALMENT—PHYSICIANS.

Plaintiff's action for malpractice of her physician was not barred by the two-year statute of limitations (3 Comp. Laws, § 9729, as amended by Act No. 168, Pub. Acts 1905), if defendant fraudulently concealed from her the cause of action, by insisting falsely that she was only bruised, that her shoulder had not become dislocated, plaintiff relying on his advice and bringing suit within two years after discovering that she had in fact suffered a dislocation of her shoulder.

2. FRAUD—CONCEALMENT—STATUTES—NEGLIGENCE.

The questions of fraud and of plaintiff's diligence in discovering the fact were for the jury where the evidence tended to

support plaintiff's claim that she was injured by a fall, that
defendant, who had been her family physician for years and
was of her own nationality, informed her that her shoulder was
only bruised, treated her with liniment, failing for two years
to take any ordinary precaution to ascertain the truth, that
her arm remained useless, and when another physician ad-
vised her that it was dislocated, defendant insisted it was
not; and plaintiff was entitled to have considered defendant's
admission that he discovered the dislocation when he first at-
tended her.

Error to Kent; Perkins, J. Submitted January 19,
1912. (Docket No. 67.) Decided July 11, 1912.

Case by Arentje Groendal against Paul Westrate for
malpractice. A judgment for defendant on a verdict
directed by the court is reviewed by plaintiff on error.
Reversed.

*Linsey & Shivel*, for appellant.

*Bundy, Travis & Merrick* and *Butterfield & Keeney*,
for appellee.

McALVAY, J. This is an action brought by plaintiff
against defendant, a practicing physician and surgeon in
the city of Grand Rapids, for damages for malpractice.
Defendant pleaded the general issue, with notice of the
statute of limitations. The trial resulted in a verdict in
favor of defendant, directed by the court, after both par-
ties had rested. The case is here upon a writ of error by
which plaintiff seeks a reversal. The principal error re-
lied upon relates to the direction of a verdict by the court.

For the purposes of this determination, the evidence on
the part of the plaintiff will be given the most favorable
construction it will bear, and, so considered, it establishes
the following facts: On May 1, 1906, plaintiff, who is a
heavy woman, was at work in her home in Grand Rapids,
cleaning the stairs leading to the second story of the
house, when she fell from the top step. By the fall she

suffered a dislocation of the left humerus (upper arm) bone, called a subglenoid dislocation. This dislocation is so named when the upper end of this bone is forced downward from its place in the socket of the shoulder-blade. Defendant was called and attended her within about half an hour after the accident, and was informed how it occurred. Her husband and her daughter and Mr. Klyn, now married to her daughter, were present. On being asked, defendant, in their presence, stated that the arm was not out of joint or broken; that it was just stretched and bruised. He took no steps to reduce the dislocation. He simply bandaged the arm and treated it with liniment. The dislocation was never reduced. The bones were in the same position at the time of the trial as when plaintiff was injured. Defendant continued to treat her at her house for several weeks, and afterwards at his office for several months, without giving her any relief. It appears that he again told her in January, 1907, that her arm was only stretched and strained, and that it might take two or three years before it became better, and never told her that it was dislocated at the shoulder; that she believed and relied upon what he told her relative to her injury; that she had known him for about 11 years, and he had been her family physician most of that time, during which she had no other physician; that he was a Hollander, of the same nationality with the plaintiff, and she conversed with him in her native tongue; that he saw her many times during 1907 and frequently asked her about her arm, and was told that its condition was unchanged. The arm was practically useless and so continued without improvement. She was first informed that her shoulder was dislocated by another physician in April, 1909. She told defendant of this information, and he said that it was not so. He concealed from her the fact that her shoulder was dislocated and always denied that such was the fact.

From the evidence in the record, as far as it relates to the question of negligence and malpractice charged, there is no doubt but that disputed questions of fact were pre-

sented for the consideration of the jury. The point upon which a verdict was instructed was that the right of action was barred by the statute of limitations.

The provisions of Act No. 168, Pub. Acts 1905 (being section 9729, 3 Comp. Laws, as amended), in force at the time this cause of action arose, among other things provides that all actions for malpractice against physicians and surgeons shall be commenced within two years after the cause of action shall accrue, and not afterwards. Plaintiff, in instituting her suit more than two years after the right of action accrued to her, relied and declared upon the provisions of section 9739, 3 Comp. Laws, which reads:

"If any person who is liable to any of the actions mentioned in this chapter shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he has such cause of action, although such action would be otherwise barred by the provisions of this chapter."

The court held that there was no evidence in the case to go to the jury upon the question of fraudulent concealment from plaintiff by defendant of her cause of action within the above statute relied upon, and that plaintiff's cause of action was barred by the statute of limitations, and directed a verdict accordingly.

It is contended that the record shows no reasonable diligence on the part of plaintiff to discover or detect the fraud, and that there is no evidence tending to show positive fraud on the part of defendant. In the consideration of the proposition under discussion, it must be kept constantly in mind that the question of the liability of defendant to plaintiff for damages for malpractice is not before us. We are considering the question whether she can get into court to try the case involved in that issue. We are to determine whether by her laches she has lost her right of action, or whether by the conduct of defendant it was fraudulently concealed from her. In determining

both of these contentions, the relations of the parties, and the acts, statements, and representations of defendant to the plaintiff, must be critically examined.

The brief resumé of the case made by plaintiff herein contained shows: First, the relation of physician and patient, which, of itself, begets confidence and reliance on the part of the patient. This relation had existed for a term of years, and during that time she had no other physician. They were fellow countrymen, and conversed together in their native tongue. She was ignorant and unlearned, and relied upon him and believed that he told her the truth. She maintained her trust in him until April, 1909.

Under the circumstances of this case, the question of her diligence to discover her condition was one of fact, to be submitted to the jury. Smith on Frauds, § 87. The question of diligence has been frequently passed upon by this court in chancery cases, where fraud has been charged, applying the same principle. *Barnes* v. *Brown*, 32 Mich. 152, 153; *Smith* v. *Werkheiser*, 152 Mich. 177 (115 N. W. 964, 15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *Lewis* v. *Jacobs*, 153 Mich. 664 (117 N. W. 325); *Comfort* v. *Robinson*, 155 Mich. 143 (118 N. W. 943); *Hedin* v. *Surgical Institute*, 62 Minn. 146 (64 N. W. 158, 35 L. R. A. 417, 54 Am. St. Rep. 628).

In considering the question of whether there was evidence in the case tending to show a fraudulent concealment by defendant of the cause of action, we need not confine ourselves to the case made by plaintiff, but may consider the admissions of defendant.

In addition to the evidence in the case presented by plaintiff, we have the testimony of defendant that he discovered the dislocation of plaintiff's shoulder when first called to attend her. Whether he first knew it then, or discovered it later, when it was too late to reduce it, as the declaration charges, is of no consequence.

If her testimony and that of her witnesses is true—and

it must be so taken in this discussion—the conclusion cannot be avoided upon this record that there was evidence to go to the jury tending to show that he fraudulently and purposely concealed from her the nature of her injury, which she was entitled to know, and made untruthful statements as to her condition. In the instant case it was not a mere silence on the part of defendant which was relied upon. Defendant repeatedly told plaintiff that her arm was not broken or dislocated, assured her that it would require several weeks to recover from the injury; that it was only bruised and strained and the cords stretched. When she told him she thought the shoulder lower than the other, he told her that it only appeared so to her, and, finally, when confronted with the statement of another physician that her shoulder was dislocated, he protested that it was not so. We are not determining the weight to be given to this evidence; that is a matter for the consideration of a jury. We hold that there was evidence in the case to be submitted to the jury. The court erred in holding otherwise. No other questions require discussion.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and STEERE, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.