## Security Trust Co. et al. v. Wilson.

February 27, 1948.
Rehearing denied May 11, 1948.

Harbison, Kessinger, Lisle & Bush for appellants.

A. B. Thomason for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellee, Nancy Lyle Wilson, based her cause of action below on the alleged fraud of Henry E. Curtis for conversion of bonds in the sum of $3,100.

John H. Wilson, father of appellee, Nancy Lyle Wilson, died intestate May 19, 1920. Henry E. Curtis qualified as administrator of the Wilson estate and also as guardian of appellee, who was then 16 years of age. H. E. Curtis was appellee's maternal uncle and husband of Jennie Morton Curtis, one of the appellants.

On September 14, 1925, Henry E. Curtis filed in the Fayette County Court his final settlement as administrator of the estate of John H. Wilson. Simultaneously therewith he filed a report and partial settlement of his accounts as guardian for Nancy Lyle Wilson. The administrator's report showed that he transferred to himself as guardian for Nancy Lyle Wilson $3,100 in government bonds, and $374.36 in cash. The guardian's report and partial settlement showed that he held in his hands as such guardian $3,100 in government bonds and $30.96 in cash. Both settlements were confirmed on October 12, 1925, and duly recorded. No further settlement by Henry E. Curtis as guardian for appellee appears of record.

Henry E. Curtis died November 11, 1942, leaving a will by which he devised all his property to his wife, Jennie Morton Curtis, who also was named as executrix. Due to her inability to act as executrix because of her mental condition, the Security Trust Company was appointed and qualified as administrator with the will annexed. The inventory and appraisement of the Curtis estate showed that at the time of his death Curtis owned, among other securities, a $100 Certificate of Deposit Republic Building of Denver, and 30 shares of Seneca Hotel Company stock. These stocks were distributed in kind to Jennie Morton Curtis.

On July 30, 1946, more than 20 years after appellee became of age, and more than 3 years after the death of Henry E. Curtis, appellee brought this action against Jennie Morton Curtis and the Security Trust Company as her committee. She alleged that on October 26, 1925, which was 14 days after the partial guardian settlement above, Henry E. Curtis, without her consent or knowledge, fraudulently, wrongfully, and unlawfully ex-

changed the U. S. Government bonds belonging to her for the shares of Seneca Apartment and the Certificate of Deposit of the Republic Building of Denver, and took title to them in his own name, and that Curtis intentionally concealed from her the fact that he had fraudulently, wrongfully, and unlawfully exchanged the bonds belonging to her for the stock, and that she did not learn or discover these wrongful and unlawful acts until May 1946. She further said that Henry E. Curtis was an uncle of plaintiff, being her mother's brother, and that by reason thereof she reposed the utmost confidence in his honor and integrity.

General demurrer was filed to this petition but before it was ruled on appellee filed amended and second amended petition. The general demurrer theretofore filed, which was considered as also going to the amended petitions, was overruled.

Appellants then filed answer admitting the historical facts alleged in the petition and amended petitions but denied all other allegations. In addition to the denials the answer pleaded affirmatively that appellee became 21 years of age on September 26, 1925; that any cause of action she had against her guardian to settle his accounts accrued on that date; that the alleged fraudulent exchange of bonds for stock occurred October 26, 1925; that Henry E. Curtis died on November 11, 1942; and that the action herein by appellee, which was instituted on July 30, 1946, was barred by the 5, 10, and 15 year statutes of limitation, which were pleaded and relied on as a complete bar.

After filing reply the case was referred to a master commissioner to take proof and report his findings on the law and on the facts. After hearing testimony the master commissioner filed his report finding that plaintiff should recover the sum of $3,100 with interest at the rate of 6% per annum from October 26, 1925 until paid. The commissioner made no finding on limitations.

Exceptions and amended exceptions to the commissioner's report were filed by appellants. The case was submitted to the court on the exceptions and amended exceptions to the commissioner's report, on exceptions to the depositions, and on plaintiff's motion to confirm the report. The court handed down a written opinion,

which was made a part of the record, and entered judgment overruling the exceptions, and confirming the report of the commissioner. Judgment was entered accordingly, from which this appeal is prosecuted.

Appellants contend: (1) An action for relief from fraud is barred in 5 years unless not discovered by due diligence within that time, and is barred in 10 years in any event. (2) Concealment of a cause of action for fraud cannot extend the limitation period beyond 10 years. (3) Demurrer to the petition as amended should have been sustained. (4) Appellee's alleged cause of action is wholly unsustained by the evidence. (5) The commissioner's report was erroneous both in findings of fact and conclusion of law. (6) The exceptions to the depositions should have been sustained. (7) A suit for settlement of guardianship accounts is barred 15 years after the ward becomes of age. (8) Appellee's claim was a stale claim, barred by laches.

As stated above the chancellor rendered an opinion in the matter in which the points raised above were thoughtfully cared for. We incorporate herein this well considered and pointed opinion and adopt it as the opinion of this court.

"This cause is before the Court on defendants' Exceptions and Amended Exceptions to the Commissioner's report and on the order of reference.

"The Court agrees with the Commissioner's findings of fact herein. Therefore, in his findings of fact, the Commissioner's Report should be confirmed.

"The defendants rely heavily upon the Statute of Limitations, especially KRS 413.120(12) and KRS 413.-130(3), and laches. The plaintiff recognizes the danger to her case from this plea of limitations and laches, but contends that the Statutes of Limitations have been tolled. The briefs have been long, helpful and interesting, but the Court is of the opinion that the whole question turns upon whether or not plaintiff's cause of action has been kept alive by KRS 413.190, which provides:

" '(2) When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by

any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.'

"The portion of this Statute which applies to this case, if any of it does, is that portion which reads 'or by any other indirect means obstructs the prosecution of the action.'

"To stop the running of the statute there must be some affirmative fraudulent acts and the fraudulent acts must have been actually concealed from the plaintiff, unless these acts are peculiarly within the knowledge of the wrong-doer, or a fiduciary or trust relationship exists between the parties.

"In Reuff-Griffin Decorating Company v. Wilkes, 173 Ky. 566, 191 S. W. 443, 446, our Court of Appeals quoted with approval the following, from Vol. 25 Cyc.;

" 'Generally, however, it may be stated that, if a fact exists from which a cause of action arises which is not peculiarly within the knowledge of the party from whom the right is to be received, a fact which may be ascertained by inquiry or diligence, there is no duty on the debtor to give notice of the fact, and mere ignorance thereof on the part of the creditor will not prevent the running of the statute.'

" 'Closely connected with the text the further rule is laid down in substance that if the concealed fact is exclusively or peculiarly within the knowledge of the party to be charged and there is a relation of trust or confidence between the parties by reason of which it is the duty of the one to disclose to the other the fact or facts upon which the cause of action or the immediate right to prosecute a particular remedy matures or arises, the omission to disclose what it is the special duty of the defendant to disclose is a fraudulent concealment.'

"Am. Jur., Section 168, Limitations of Actions, Volume 34, lays down the following rule:

" 'Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case so long as the relationship continues uprepudiated, there is nothing

to put the injured party on inquiry, and he cannot be said to have failed to use diligence in detecting the fraud. Thus it has been held that a complainant is not chargeable with want of diligence in not *discoverning* the fraud of his guardian in concealing the receipt and existence of property where such guardian was his step-father, in whose family, and as whose child he was brought up, and in whom he had implicit confidence, there being no reason to suspect that a fraud was being practiced.'

"It is contended by the plaintiff and denied by the defendants that a fiduciary relationship existed in this case which would affect the defendants' duties. In Abbitt v. Gregory, 201 N. C. 577, 160 S. E. 896, 906, the Court defined confidential relation as follows:

" 'The relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'

"The Court also quoted further with approval the following from Pomeroy's Equity Jurisprudence, 3d Edition, Vol. 2, Section 956;

" 'It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'

"In Small v. Dorsett, 223 N. C. 754, 28 S. E. 2d 514, 518, the court in holding that confidential relationship existed, said:

" 'In the first place, the evidence discloses that the relationship, both business and social, existing between the plaintiff and defendant, were such that the plaintiff was justified in having implicit confidence in the defendant—she was a woman 65 years of age without business experience; he was a younger man with wide business experience; they had been close associates, neighbors and friends in the years past.'

"In Deemer v. Weaver, 324 Pa. 85, 187 A. 215, 216, the Court, in recognizing a fiduciary relationship, said:

" 'Plaintiffs were not dealing with a stranger but with their aged aunt, and there was no cause for them to doubt that her offer was made for any reason other than the one she gave, namely, that she was willing to make this inducement because she wished to be relieved of the burden of keeping up a home in a locality which had become undesirable.'

"It will be noted that KRS 413.190 does not require the means of obstruction to be a 'direct means,' but says 'by any other indirect means.' The indirect means employed by the uncle in the case at Bar, if it existed, was a failure to speak and advise his niece that he had exchanged her bonds for other bonds and taken the title in his own name.

"The case of Kurry v. Frost, 204 Ark. 386, 162 S. W. 2d 48, 50 is interesting on this question of negative or silent concealment. This was a personal injury case. The defendant in that action denied that she drove the car which caused the accident, and also contended that the case was barred by limitations because the accident occurred nine years before the suit was filed. The plaintiff relies upon the following statute to toll the statute of limitations:

" 'Section 8952 of Pope's Digest of the Statutes of Arkansas reads as follows: "absconding debtor. If any person by leaving the country, absconding or concealing himself, or any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so prevented." '

"The Court in discussing the question of concealment said:

" 'Here, Mrs. Kurry did not stop, as the law and the dictates of humanity required, but drove on, leaving appellee to his fate. Had she stopped it would have been known who had struck appellee, but by driving away, in violation of the law, she concealed her identity, and appellee remained unaware of his cause of action against her until the trial of the suit against her husband.'

"The Court concluded its opinion by saying:

" 'Mrs. Kurry did not conceal herself. She concealed her act. She continued to reside in Paris, where the injury was inflicted, but she has never yet, and does not now, admit striking appellee, and we think a question was made for and properly submitted to the jury whether she had, by "any other improper act of (her) own," concealed from appellee his cause of action against her.'

"The Court is of the opinion that considering the fact that Henry E. Curtis was the uncle of the plaintiff; that after the death of Plaintiff's father the said Curtis had managed his sister's affairs and had also been guardian for and managed the financial affairs of the plaintiff; that he had shown his interest in his sister and in his niece by failing to charge either of them any commission for handling these estates; that such a fiduciary relationship existed between the decedent and this plaintiff that it would have been embarrassing for her to have questioned her uncle's integrity, or have demanded that he show her the bonds which he said were in his possession when he filed his guardian report; that this fiduciary relationship was such that there was a duty upon the part of the said Curtis to advise the said plaintiff that he had exchanged her bonds and taken the title to the ones exchanged for in his own name; that this concealment constituted a means of obstruction within the meaning of KRS 413.190, and that this concealment tolled the running of the statute of limitations.

"The exceptions to the Commissioner's Report and Amended and Supplemental Exceptions to the Commissioner's Report should be overruled and the motion to confirm should be sustained.

"Counsel will prepare an order in conformance with this opinion and the Clerk will make the opinion a part of the record."

The judgment is affirmed.